IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Chloris Hall,　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　　　)　　　No. 18 C 1349
　　v.　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)　　　Judge Ronald A. Guzmán
Lee Daniels (Lee Daniels Entertain-　　　　)
ment), Author Solutions LLC d/b/a　　　　)
AuthorHouse, Xlibris, Denisy Network,　　)
and Twentieth Century Fox Film　　　　　　)
Corporation,　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　　　　　)

## MEMORANDUM OPINION AND ORDER

　　　　For the reasons stated below, the Court grants the motions to dismiss of Author Solutions LLC d/b/a AuthorHouse and Xlibris (collectively, "ASL") [23] and Twentieth Century Fox Film Corporation ("TCF") [49]. Because Lee Daniels (Lee Daniels Entertainment) and Denisy Network have not been served and more than 90 days has passed since the filing of the complaint, these defendants are dismissed without prejudice. *See* Fed. R. Civ. P. 4(m). Civil case terminated.

## STATEMENT

**Facts**

　　　　Chloris Hall alleges that she wrote a book entitled, "Girl, You Ain't Gonna Make It, So They Said," which she registered with the U.S. Copyright Office in February 2013. (Compl., Dkt. # 1, ¶ 3.) She also alleges that she registered the audio version of her book, entitled "I'm Breaking Through," and the cover art for the audio book with the U.S. Copyright Office in November 2017.[1] (*Id.* ¶¶ 5, 6.) According to the complaint, in February 2013, Hall attended a

---

[1] Contrary to Hall's allegations, TCF contends that the audio book and cover art have not been registered with the U.S. Copyright Office. (Def.'s Mem. Supp. Mot. Dismiss, Dkt. # 51, at 1 n.2.) In her response brief, Hall states that she has submitted the audio book and cover art for registration with the U.S. Copyright Office and "[w]ill have copyright before the case is over." (Pl.'s Resp., Dkt. # 57, at 11.) Because Hall has not demonstrated ownership of a valid copyright as to the audio book and cover art, the Court will not consider those works in evaluating her copyright infringement claim.

"self-publishing book-to-screen pitch fest in [L]as Vegas, Nevada" at which defendants ASL[2] were present. (*Id.* ¶ 13.) Hall alleges that she pitched her book to ten producers at the event and that ASL sent her novel to four producers in Hollywood. Hall also "pitched an electronic copy of her novel" to Lee Daniels, a producer, by sending to Daniels' website, www.leedaniels.com, a link to her own website, www.chlorishallbooks.com, on which she had posted a copy of her book. (*Id.* ¶¶ 17, 18.)

According to Hall, Daniels and TCF turned her book into the television series *Empire* without her authorization. Hall alleges two counts of copyright infringement: Count I against Lee Daniels and Lee Daniels Entertainment and Count II against TCF. Under consideration are two motions to dismiss, one each by ASL and TCF.

**Analysis**

On a motion to dismiss, this Court may consider materials referred to in the complaint and central to the plaintiff's claims. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). In cases alleging copyright infringement, that rule generally encompasses the original and challenged works. *See Hobbs v. John*, 722 F.3d 1089, 1091 n.2 (7th Cir. 2013). Accordingly, this Court reviewed a copy of Hall's novel as well as the written summary of *Empire* provided by TCF.

    A.    <u>ASL[3]</u>

ASL moves to dismiss on the ground that Hall fails to state a claim of copyright infringement against it. In her response to ASL's motion to dismiss, Hall contends that she terminated her contract with ASL based on its failure to report royalties to her. Plai Hall further states that ASL is "in this case because Empire is what came about from the book-to-screen event that [she] attended . . . and [she] has not received any payments nor signed any legal documents giving authorization of use." (Pl.'s Resp., Dkt. # 34, ¶ 14.) According to Hall:

---

[2] According to AuthorHouse's website, it is a "global leader in self-publishing" and its "imprints have helped more than 200,000 authors realize their dreams of publishing." https://www.authorsolutions.com/Our-Story/Our-Timeline/. Xlibris is one of AuthorHouse's imprints and provides a "comprehensive range of publishing, editorial, add-on and marketing services" to authors. https://www.authorsolutions.com/Our-Services/ US-Imprints/Xlibris/.

[3] Although ASL is not expressly named in either count of copyright infringement, the Court assumes that Hall intended to allege a claim of copyright infringement against these defendants based on the allegations in her complaint.

> [ASL] has become comfortable profiting off the Plaintiff's products that [it is] . . . willing to fight a case for a product knowing that this is unlawful harassment, because there is no legal contract involved to reference, no relationship involved, [ASL] has no ownership or rights to the product involved, and a terminated contract has been in effect since 2014.

(*Id.* ¶ 16.) To establish copyright infringement, Hall is required to prove two elements: "'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760 (7th Cir. 2016) (citation omitted). "To satisfy the second element of her claim, Plaintiff must show that Defendants 'actually copied' her work." *Weller v. Flynn*, No. 17-CV-8799, 2018 WL 2299240, at *8 (N.D. Ill. May 21, 2018). Hall does not allege that ASL actually copied her work; she contends that ASL may have forwarded her book to Daniels and TCF, and they, in turn, infringed her copyright. Because Hall fails to allege any facts that ASL actually copied her book, the motion to dismiss the copyright infringement claim against these defendants is granted.

B. TCF

In addressing the second prong of copying, the Seventh Circuit has stated that "infringement simply requires the plaintiff to show that the defendant had an actual opportunity to copy the original . . . , and that the two works share enough unique features to give rise to a breach of the duty not to copy another's work." *Peters v. West*, 692 F.3d 629, 633-34 (7th Cir. 2012). In other words, a plaintiff must show: (1) "that the defendant had the opportunity to copy the original (often called 'access'); and (2) that the two works are 'substantially similar,' thus permitting an inference that the defendant actually did copy the original." *Muhammad-Ali*, 832 F.3d at 761 (quoting *Peters*, 692 F.3d at 633) (internal quotation marks omitted). TCF contends that Hall has alleged neither access nor that the works are substantially similar.

With respect to access, Hall alleges that she attended a 2013 "pitch fest" in Las Vegas at which she pitched her novel to ten unnamed "Hollywood producers," and that ASL sent her book to four unnamed "Hollywood producers." "Establishing access requires Plaintiff to demonstrate a 'reasonable possibility of access' to her original work." *Weller*, 2018 WL 2299240, at *8. While Hall need not prove her case at this stage of the litigation, she must allege sufficient facts to state a facially plausible claim permitting "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted). Hall's assertion that she or ASL provided copies of her book to unspecified Hollywood producers (of which there are thousands) fails to support a reasonable inference that TCF had an opportunity to review or copy Hall's book.

Hall next alleges that she emailed a link to her website (which contained a copy of her book) to Lee Daniels (for ease of reference, the Court will refer to Daniels and his company as

3

"Daniels") via his company's website. While there is obviously some type of collaborative professional relationship between TCF and Daniels with respect to the production of *Empire*, it is unclear from the current state of the pleadings what the parameters of that relationship are – legally, logistically, or creatively.[4] The instant motion, however, is brought by TCF, not Daniels, and Hall makes no allegations that she sent a copy of the book or an email with a link to her website to TCF.[5] Thus, Hall fails to plead facts supporting a conclusion that TCF had access to her book. Nevertheless, even assuming for purposes of this motion that Daniels' conduct or knowledge can be attributed to TCF, and that Hall has pleaded sufficient facts to establish access on TCF's part, her copyright claim fails on the substantial-similarity prong.

To determine substantial similarity, the Court looks to "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1101 (7th Cir. 2017). Hall's allegations of copyright infringement plainly fail in this regard. As an initial matter, the setting and tone for each of the works could not be more different. While Hall's book painstakingly details the struggles of the main character, Temikia (who is based on Hall and her real-life experiences), as she grows up in Chicago in poverty with thirteen siblings, *Empire* revolves around the dramatic exploits of an enormously wealthy family in Manhattan, including three sons, as they negotiate running a successful music production company in the face of the father's diagnosis with amyotrophic lateral sclerosis (known more commonly as ALS or Lou Gehrig's disease).

Hall contends that TCF simply altered the financial circumstances of the characters but

---

[4] An internet search reveals several articles that describe Daniels as the co-creator and producer of *Empire*. *See* http://time.com/3656583/lee-daniels-empire/; https://www.nytimes.com/2016/12/28/arts/television/lee-daniels-fox-star-empire.html; https://www.hollywoodreporter.com/live-feed/empire-star-crossover-official-956188; https://abcnews.go.com/Entertainment/empire-creator-lee-daniels-misses-filmmaking-television-thing/story?id=50585756.

[5] TCF asserts that Hall cannot establish access solely by alleging an unsolicited mailing to a defendant's corporate address. *See, e.g., Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016) (noting that "multiple courts have held that a plaintiff 'cannot create a triable issue of access merely by showing 'bare corporate receipt' of her work by an individual who shares a common employer with the alleged copier.'") (citation omitted). Assuming *arguendo* that this analysis applies, the inquiry is necessarily fact intensive and not appropriate for resolution on a motion to dismiss, particularly in light of the questions regarding the relationship between TCF and Daniels.

retained the same or similar expressions, nicknames, reactions, initials, and names as described in her book.[6] In support, Hall points out that:

- The fathers in both works face serious illness (Lonnie in Hall's book has HIV while Lucious in *Empire* is diagnosed with ALS, which, in a plot twist, turns out to be inaccurate)[7]
- The parents' names in Hall's book (Carla and Lonnie) have the same initials as the names of the parents in *Empire* (Cookie and Lucious)
- The nicknames of the main female characters in each of the works are similar: Cocoa (the main character in the audio book version of Hall's book) and Cookie (the mother and main female character in *Empire*)
- Temikia is forced to watch her father beat her sister with a belt and then use a broom to prod her sister out from underneath the bed where she is hiding, while in *Empire*, Cookie playfully swats her son with a broomstick
- After Temikia watches her brother Jimmy, a father figure to her, be sentenced to prison on drug charges, she seeks solace with Ronny, an older man ("sugar daddy"), while in *Empire*, the youngest son watches Cookie, his mother, be taken to prison on drug charges, and he then becomes involved with an older woman ("sugar mama")
- Temikia's mother hits Temikia when she breaks the heel off one of her mother's high-heeled shoes, while in *Empire*, a flashback sequence shows Lucious taking the middle son outside and dumping him into a trash can for playing dress-up with women's clothes
- In each work, characters hold people at gunpoint and try to save family members by reaching for guns, and, in each work, drama ensues after revelations of the true identity of babies' biological fathers

These cherry-picked similarities, however, are not protected expression under copyright law. It is true that each of the works at issue contains characters facing significant personal

---

[6] Notwithstanding, Hall states in her response brief that she "is not claiming to be the entire creator of the T[V] Show "*Empire*;" the music and LGBT scenes belong[] to Mr. Daniels from the pilot season one, because the plaintiff cannot relate to the LGBT community or Music and the plaintiff is solely referring to the expression that [was] taken from the Plaintiff[']s copyrighted material that she can identify [as] belonging to her and nothing more." (Pl.'s Resp., Dkt. # 57, at 13-14.)

[7] It appears Lonnie's HIV is mentioned on only one page of Hall's book, while Lucious's ALS drives the plot for the first season of *Empire* as his sons and ex-wife, Cookie, compete to be named Lucious's successor as head of the family-run music company, Empire Entertainment.

5

challenges, such as illness, drug and alcohol misuse, family strife and separation, extramarital relationships, gun violence, and physical and emotional abuse. But countless novels, biographies, autobiographies, songs, and other works of art that describe tumultuous upbringings or familial interactions touch on these subjects, and the "Copyright Act does not protect 'incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic.'" *Hobbs,* 722 F.3d at 1095. As noted by the Seventh Circuit:

> [A] copyright owner can't prove infringement by pointing to features of his work that are found in the defendant's work as well but that are so rudimentary, commonplace, standard, or unavoidable that they do not serve to distinguish one work within a class of works from another. Every expressive work can be decomposed into elements not themselves copyrightable – the cars in a car chase, the kiss in a love scene, the dive bombers in a movie about Pearl Harbor, or for that matter the letters of the alphabet in any written work. The presence of such elements obviously does not forfeit copyright protection of the work as a whole, but infringement cannot be found on the basis of such elements alone; it is the combination of elements, or particular novel twists given to them, that supply the minimal originality required for copyright protection.

*Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 929 (7th Cir. 2003) (internal citations omitted). Hall's comparison of specific moments, events, and names that are similar in the two works fails to capture any protectible aspects of her book. The combination of the few similar elements Hall relies upon simply does not provide the basis for protected original expression given the vastly different stories recounted in the two works at issue.

**Conclusion**

Accordingly, for the reasons stated above, ASL's and TCF's motions to dismiss are granted.

Date: August 9, 2018

_____
**Ronald A. Guzmán**
United States District Judge